1-13-4033 Don Barajas v. Cash America International Can you please report? That's fine. I'm aware of this. Okay, great. Okay, good. I heard some football analogies today and I kind of feel like Coach Trestman after a losing game here. Should I explain the loss or sit down and fire myself? I'm going to have to try to tell you what happened at the commission in this case and why we believe the commission should be reversed. Before you go on, I'm feeling, alluding to you feeling under some pressure, I've got to bring up a subject with regard to your brief. I'm sorry? I have to bring up an issue with regard to your brief. Yes, please. You're aware of Supreme Court Rules 341B-6 requires you to include in the brief statement of facts outlining the facts stated accurately and fairly without argument or comment and with appropriate reference to the pages of the record. For example, you've got a statement in the statement of facts claiming the certs that the medical records from consent are not 100% accurate. The commission incorrectly referenced Dr. Mileti's records. You've got some argument in there, okay? You need to avoid that. We'll in the future take that comment seriously. And also you've got some citations to the record that you don't have the pages referenced either, okay? And I apologize for that. Otherwise your brief could be stricken or your appeal dismissed, okay? And I understand that in the future we'll take that completely to heart. We're here on a credibility issue raised by the commission in this matter. And the petitioner is well aware of the standard of review, well aware of the deference that should be afforded the commission. In order for this petitioner to prevail, we understand that we're going to have to show you not reweighing evidence, not doing anything of the sort, but trying to point out where the basis for the facts that they are using to point to the petitioner not being credible aren't correct in this record that the commission had. This is not a case, strangely, of a doctor battle. And one might have thought that this would be a doctor battle issue with Dr. Goldberg and Dr. Zendrick and the commission saying we view one as more credible than the other. This is a case where I'll suggest they don't discuss these doctors because both doctors agreed that this petitioner should have surgery. No doubt she has preexisting spondylolisthesis. No doubt that the issue is should she have the surgery. Both Dr. Zendrick and Dr. Goldberg say yes to surgery, but the issue then becomes it's the million-dollar question in this is, well, she had to have pain at some point in order for this to be a cause, a work-related cause. We first suggest that the commission, when it says that Dr. Goldberg issued a causation opinion, Dr. Goldberg did not issue the standard causation opinion. Dr. Goldberg's a fine doctor, and he, in three different reports, each time tried to address this issue for the respondent, and each time he said he can't. Okay? He can't reach causation. Why can't he? Because he goes, I don't know, there's this record out there. I don't know what this, if you have this record and this person didn't have any pain within a month, well, wow, maybe this is not causally connected to her accident. Maybe we could zero in on some of the discrepancies that I think troubled the commission and caused them to get old the way they did. Certainly. They noticed discrepancies between the claimant's testimony at the arbitration hearing and the history's. The commission noted that although the claimant testified to the immediate onset of low back pain, of course, which supports her claim, the history was not reflected in the contemporaneous accident report that she provided. The commission pointed out that despite claims of gradually increasing low back pain, she waited two months to seek medical care. When she did seek medical intervention, she reported that she didn't have any back pain until about a month after the accident. So how do you respond to those findings? Okay. I respond two ways. First of all, I think the petitioner was quite credible in her statement that I, she says, I did not have this low back pain, a history of it, and I had it at the time. She's working for Concentra. I think, and I ask you to read whatever, but she is a stoic woman. It presents itself as a stoic woman. And if you take, she acknowledges at trial that I had some aches and pains from age-related. And she never starts to go down a path of saying that I had a long history or I didn't have a long history of back pain. She truthfully says aches and pains, and her idea is she fills out this report. And I think the report, none of the doctors even honed in on this report at Concentra as being, and having any significance. Only the commission does. Neither Dr. Goldberg nor Dr. Zindrig. Dr. Zindrig says he's an outlier. Dr. Goldberg doesn't put any weight on it whatsoever in any of his reports. I think it is, I don't want to use the word red herring, but her report that day, there's no doubt that she has a stipulated accident. Nobody's questioning. It's not on witness. She just doesn't go for any immediate treatment at that time except for the blood test. So I don't, I think when the commission hones in on that, that's where, that's number one, the reason for an opposite conclusion. And Dr. Zindrig gave a causation opinion. Yes, he did. Right? Yes. But the commission said he relied upon a history that claimants suffered immediate pain in her back, which was contrary to the records of Dr. Remlin, right? Right. So couldn't they, and Dr. Remlin said that she had a non-work-related lumbar strain. So why couldn't the commission, you know, review the records, find these discrepancies, and rely on Remlin versus Zindrig? Okay. Well, because when the commission does it, I think they're picking out something that there's not a good basis for using Dr. Remlin. If Dr. Remlin's had a lot of treatment, you have one visit where she sees Dr. Remlin, the date's wrong, okay? And to put a lot of emphasis on that one record, a couple of things that I think are important to consider. When that petitioner goes to see Dr. Remlin, she's not reviewing her records when she walks out of Concentra. Suggests, as we pointed out earlier, she has no idea what Dr. Remlin put down, that she had no pain complaints. Goes to see other doctors, and everything else starts to become very, very consistent. It's the only record in our record here that has these no pain complaints. When she's talking to the HR, Ms. McCloskey, and doesn't put down medical treatment, again, I don't think that has any If you pick that also as a basis for denying the surgery, it's picking at things that no one else, especially doctors, viewed as weighty, important, good bases for not authorizing the surgery. How often after the accident did she wait to seek medical intervention? If I took the respondent's brief as accurate, it's approximately 62 days. We have from March 18th to May 18th. Isn't that a significant factor that the commission relied on? It wasn't a significant factor for the two well-resteemed doctors in this case. They don't look at that because they both point out But it's not up to the doctors to decide whether the claim is supportive and is sufficient. In the evidence, the commission must weigh that along with the counter evidence, correct? I will. But a commission decision should, I would suggest, should have a good basis. It shouldn't just be picking at one fact here, one fact there. That wouldn't be a good commission I think it is still Louis Fines. The commission did not find her client credible in the question of whether she first began to experience pain. They said that the report that she filled out the day it happened did not reference that pain. It only said that she injured her left knee and her finger. And that it doesn't appear until two months later that she's even complaining about pain in this area. And Goldenberg and Zindrig seem to agree that there's a causal relationship only if the history is accurate. And that if her low back symptoms didn't arise until a month or more after the accident, then there's no causal connection. So it's really a question of credibility. Now, I know that you've got explanations for why she did what she did. But whether those explanations are going to be believed is the province of the commission. They didn't believe her. They simply didn't believe her. Well, and again, with the standard of manifest weight, again, the standard is they don't get to see her. They didn't see if she was twitchy, shifty eyes, you know, any manifestations like an arbitrator does. And that's our standard. We have to live with that. So the problem when you're dealing with the petitioner's credibility is did they have a good basis for any of that. And, Justice Hoffman, when the petitioner heard Dr. Goldberg say, well, if there had been other indicias of pain complaints, you know, maybe I would really be exactly there with Dr. Zindrig. The petitioner then at trial didn't just sit back and say, I'm just going to testify and let this one roll. Did bring in, in a no discovery situation by subpoena, people from her employer to try to show what she was trying to say. That it wasn't just, and this is before you knew what the commission would find, try to say what she was feeling at the time and with immediacy after the accident. In attempt to solve, if I can use that word, Dr. Goldberg's concern. She did try to do that. Again, credibility. This is not a situation where the commission says I have an unwitnessed accident, there's really nothing to support it, and 62 days later somebody goes for treatment. Wow, should we really think this happened at work or someplace else? Don't have that situation here. No, we don't, but the case hinges on large part, even with your doctor, whether or not she was having pain immediately following the accident. So it's not subjective. If somebody waits over two months, that cuts against the argument they were having immediate pain, doesn't it? I do. And again, what was brought out at trial was that this petitioner is the sole wage earner of her family. And that was trial testimony that in the past when she has seen her primary care physician, Dr. Piotrowski, she did not do treatment all the time. I mean, this is a, again, the commission doesn't get to see a stoic woman. This commission sees the facts on medical records, and I think they cherry pick unusual facts in this case to come up with the no surgery argument. They don't challenge the two people that she brought in as witnesses extremely. They don't say that they weren't credible either, that this was a, you know, you brought in two of your friends. These weren't friends who she brought in to try to explain her pain complaints. No one on the respondent side, except to say that she didn't seek treatment, had any opinion one way or another whether she wasn't in pain, except for the human resource manager actually saying, I told her, this kind of fall that I heard, this sounded like a very loud fall that we heard, and we saw her laying there, you probably need treatment. And just because this petitioner didn't run for treatment, can't win sometimes. Run for treatment, you went too fast, don't seek it, shame on you. And I don't think this, the commission went and cherry picked Dr. Redman's record, and also the other record that I think they also, when they do make mistakes like this, this is where I think they can be reversed. When they go on and say that she had this long history of back problems, one, it's not Dr. Piotrowski's record of treatment. Yes, doctors have other doctors included in their records. Dr. Piotrowski had Dr. Mileta's record. She's a rheumatologist. She talks about fibromyalgia in many different parts, not just the back. The petitioner didn't lie about that. In fact, the petitioner put in those records. The petitioner wasn't trying to hide Dr. Mileta. Didn't she at one time indicate she didn't have a history of back problems? She said that, yes, but she never had a history of back problems. She goes to see, in 2010, a Dr. Mileta for fibromyalgia, and she talks about, I've had hip, leg, back, a generalized, which is classic fibromyalgia. Her primary care doctor doesn't have a history of treating her for back, so she's not lying flat out, no questions about it, if we've heard other arguments like that. The standard of review, it is difficult for me to stand here as a petitioner under our standard of review. Yes, we would acknowledge that. It is. But can't rubber stamp every commission decision when you look at one like this, and so why didn't you challenge, you have fine doctors here, why didn't you cherry pick little tiny things to try to deny someone surgery? Well, they can always be accused of cherry picking, right, to use that phrase, because every time they fight on the other side, the other side can say they cherry picked the evidence. I know. But in this case, I mean, again, the unusual fact of this case is I think you have two well-reasoned, I would suggest, you justices hear doctors all day long. Dr. Goldberg and Dr. Zinder are fine doctors. They both suggest a surgery. They both explain what pain she should have. And at trial ---- I don't think there's any question she needs a surgery. Nobody's disputing that. The question is, is there a causal connection to this pole vaulting exercise on the way to the bathroom? There's no right answer in manifest way. It can go either way, and either way it would be affirmed. In this particular case, they drew an awful lot based on the fact that in the accident report filled out the day of the injury, she only indicates left knee and finger, and then no treatment for two months. And they said to them, the evidence finds a discrepancy in history and clearly questions Petitioner's testimony of immediate low back pain. And there isn't any question if these doctors testified, if she didn't experience low back pain for two months after the event, there is no causal connection here. They would have to believe that she did, and the commission said based on these facts they don't believe her. And that means she failed to prove. And so my question is, on a manifest way standard, what are we to do with this? I mean, how do we do this? I think you can say that these findings, the findings that the commission uses, are not logical, relevant basis findings. Dr. Redlin's finding, we've explained why that shouldn't be used. Saying that she had back pain for seven years, that's incorrect. And beyond that, there's very little here for the commission to hang its head on with this decision. You have to take, and I think there should be a good basis for a decision, and I'll rest on that, and ask that this commission decision be reversed and the arbitrator decision reinstated. Thank you, counsel. We have time on the clock. Justices and counsel, my name is Lawrence Chemanski. I represent Cash America International. I am deaf in one ear and I'm hard of hearing in the other. I tend to be loud, and I apologize for that in advance. This case is about credibility. That's all it is. It's credibility. It's whether you believe the incidents as described by the treating medical record, the first one at a doctor she chose to go to at a clinic that she was directed to, concentra. But any clinic you want, she went to the one, she picked the doctor. I've been doing this over 30 years, and I tend to think when the treating medical first history is favorable to the petitioner, that threshold is this high. Petitioner only has to walk over it. I've got a limbo under it to try to disprove it, because if the history in the first medical supports the petitioner, I almost always lose these cases. And the reason is there is an inherent trustworthiness in that first medical report. People are there for treatment. They're worried about their condition, and they don't lie. They don't fabricate. So what do we have in this history? We have a history that says, I've had back pain for 30 days. That history is contained in a medical report that is post-accident 61 days. Both medical experts, Dr. Zendrick and Goldberg, both say, if that history is accurate, it's not work-related. It's credibility all day. Now, the commission goes on to talk about the prior back pain history. Those medical records were pursuant to Section 16. They're admissible for all purposes. When a history is silent, there's no history. The threshold's a little higher. Petitioner can still climb over it. I've still got a limbo under it. But when it's a history that is absolutely negative, and here it's negative, because the two medical experts offering their conclusions say, if that history is accurate, it's not work-related. Well, she has to disprove that that history, say that that history is wrong. We don't depose that doctor. We bring in two witnesses to try to testify to personal observations. What we've done is we've contorted ourselves into believing a set of facts that lead us to this conclusion that somehow it's work-related. You have to believe that Nancy Gabriel and Michael Gunther both ignored the protocols that exist at Cash America to send her for medical treatment. She was complaining about pain at a time before that first visit, 61 days later, but they ignored the protocols. They didn't do what they were supposed to do. They should have sent her for medical treatment and should have sent her to personnel. You have to believe they didn't follow the protocol. That doesn't make sense. The incentives are there for them to follow them. The disincentive is if you try to bury a work-related injury, you could get fired. You have to believe they acted contrary to their own pecuniary interests by denying her medical care. It doesn't make sense. She saw Ms. McCoyak on almost a daily basis, only for a few minutes, never once complained to her, never once said, I need medical care. She had a treating physician that the copay was $25, never went to a doctor. She testified, it's $25, never went to a doctor. And you've got to believe Dr. Rendlin got it wrong. She got it wrong. She wrote the wrong history down. She was not rushed. She was not crowded. She didn't testify. When I asked her specifically, was it crowded, did you have a chance to talk to her, she spent a few minutes with me alone. There was no rush. There was no anything here. She could have taken the history out. You've got to believe everybody got it wrong, or you believe the flow of the evidence. And that's what the commission believed. The flow of the evidence is she didn't complain for two months. She came in and asked for medical care, and what did they do? They said, go to Concentra right now. The day she asked, the day she went, she gave the history. This is a manifest weight case all day. The commission was asked to choose two stories, and they chose one. Unfortunately, you're not taxed with that duty here. You have a manifest weight question, and under manifest weight, you need to affirm the commission. There's nothing wrong with this decision. I ask that you affirm the commission's decision denying this case as written, exactly as it is written now. And I apologize if I was loud. Can I? All right. Memphis will wait. Okay, thank you. Counsel, you may reply. I know, I really don't want to beat this one into the ground. Again, my whole point is we well respect the manifest weight. It's an unusual standard in terms of credibility in a petitioner. When the commission gets this, and I think in this case we have pointed out enough reasons to show an opposite conclusion is on its face there. With Dr. Redlin's history, it's the only one that you can really point to. Everything else is consistent. We don't have a petitioner bouncing around from different histories in this case to doctors, and I think the petitioner took to heart Dr. Goldberg's comment and brought people in and testified. And with that testimony, instead of looking at all of that, we have a commission who just looks at one record, points to that one record, and concludes that this petitioner couldn't be credible. Again, I ask that the arbitrator, who I think got it right, be reinstated and the commission reversed. Thank you. Thank you, counsel, both for your arguments in this matter. We've taken our advisement. We've written this positional issue. The court will stand in recess until 9 a.m. tomorrow morning. Did you vote? No.